UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MANDARIN ORIENTAL, INC., <br><br> Plaintiff, <br><br> v. <br><br> HDI GLOBAL INSURANCE COMPANY and ASSICURAZIONI GENERALI S.P.A., <br><br> Defendant. | Case No. 23 Civ 4951 <br><br> **COMPLAINT** <br><br> **DEMAND FOR JURY TRIAL** |

### COMPLAINT

Plaintiff Mandarin Oriental, Inc. ("Mandarin"), by its attorneys, Jones Day, upon knowledge with respect to its own acts and upon information and belief with respect to all other matters, complains of Defendants HDI Global Insurance Company ("HDI") and Assicurazioni Generali, S.p.A. ("Generali") and alleges as follows:

### NATURE OF THE ACTION

1. This action for damages and declaratory relief arises out of the failure and refusal of HDI and Generali to honor their obligations under commercial all risks insurance policies sold to Mandarin. Among other things, the Special Perils Provision in Endorsement No. 3 of the insurance policies provided coverage for business interruption/interference losses due to infectious or contagious diseases manifested by any person within a 5-mile radius of Mandarin's four separate hotel premises in Boston, Massachusetts; New York, New York; Miami, Florida; and Washington D.C. HDI and Generali are liable to Mandarin for their full coverage obligation of $14 million in losses, part of the extensive and ongoing loss of business income sustained by Mandarin as a result of COVID-19 manifestations in persons within a 5-mile radius of the said

four separate hotel premises. Despite Mandarin's prompt notice of its claim to all of its insurance companies and the knowledge that the hospitality industry was one of the hardest hit sectors by COVID-19, HDI and Generali have made no attempt whatsoever to satisfy their coverage obligations. More than three years after Mandarin's initial notice of claim, HDI and Generali have failed to provide any written statement of their coverage position to Mandarin in the normal course of handling Mandarin's claim. HDI and Generali's extensive delays in advancing any payments for this claim or even providing a written coverage position to Mandarin have required Mandarin to file this complaint.

**PARTIES**

2. Mandarin is a corporation organized and existing under the laws of the state of Delaware, with its principal place of business in New York, New York. Mandarin is the holding company for the United States interests of the Mandarin Oriental Hotel Group, an international hotel investment and management group which currently operates 36 luxury hotels and resorts, and 9 branded residences in 24 countries and territories worldwide. During the relevant time period, Mandarin maintained the entities for its principal regional corporate office in New York, and local management, licensing, and ownership in the relevant four hotels in Miami, New York, Washington, and Boston, including minority shareholdings in the Miami and New York properties and full ownership in Washington (since sold) and Boston.

3. HDI is a corporation organized and existing under the laws of the state of Illinois, with its principal place of business in Chicago, Illinois.

4. Generali is a corporation organized and existing under the laws of Italy, with its principal place of business in Trieste, Italy.

**JURISDICTION AND VENUE**

5. This Court has jurisdiction over HDI and Generali pursuant to 28 U.S.C. § 1332(a)(1-2), in that this is a civil action among plaintiff Mandarin, incorporated in Delaware with its principal place of business in New York; and defendant HDI, incorporated in Illinois and with its principal place of business in Illinois, and defendant Generali, incorporated in Italy and with its principal place of business in Italy, a foreign state as defined in 28 U.S.C. § 1603(a); and the amount in controversy exceeds $75,000, exclusive of interest and costs.

6. Furthermore, both HDI and Generali have submitted to jurisdiction in the United States courts. Both the HDI and Generali insurance policies provide that, "It is agreed that in the event of the failure of the Company to pay any amount claimed to be due hereunder or in the event of any other dispute relating to this Policy, the Company, at the request of the Insured, will submit to the jurisdiction of any court of competent jurisdiction within the United States and will comply with all of the requirements necessary to give such court jurisdiction and all matters hereunder shall be determined in accordance with the law and practice of such court, not including the court's law regarding choice of law. The Company shall not transfer, change venue, or remove, or seek to transfer, change venue, or remove any lawsuit filed by the Insured in any such court."

7. Venue is proper in this district under 28 U.S.C. § 1391(b)(2) in that a substantial part of the events giving rise to the claim occurred in this district, and one of Mandarin's hotels which suffered losses is located in this district.

## FACTUAL ALLEGATIONS

### *The Insurance Policies*

8. Mandarin purchased "all risks" commercial lines insurance policies from HDI, Generali, Endurance American Specialty Insurance Company ("Endurance") and AIG Europe Limited ("AIG", and collectively with HDI, Generali, and Endurance, the "Insurers").

9. The Insurers each had quota share percentages of coverage under their respective insurance policies. In the event of a loss, Endurance was responsible for 45% of coverage, AIG was responsible for 20% of coverage, HDI was responsible for 15% of coverage, and Generali was responsible for 10% of coverage.

### *The HDI Insurance Policy*

10. Mandarin purchased an "all risks" commercial lines insurance policy from HDI, policy number CPD5471500, with a policy period from May 1, 2018 through May 1, 2019 to protect against the risk of loss and damages to Mandarin's business locations and operations (the "HDI Policy").

11. The HDI Policy was extended through Endorsement No. 7 to have an initial minimum period of two years, through May 1, 2020.

12. Mandarin is an Insured under the HDI Policy.

### *The Generali Insurance Policy*

13. Mandarin purchased an "all risks" commercial lines insurance policy from Generali, policy number B0901EP1601497000, with a policy period from May 1, 2016 through May 1, 2017 to protect against the risk of loss and damages to Mandarin's business locations and operations (the "Generali Policy" and collectively with the HDI Policy, "the Policies").

14. The Generali Policy was extended through May 1, 2021 per Endorsement No. 4.

15. Mandarin is an Insured under the Generali Policy.

***Special Perils Provision – Endorsement No. 3***

16. Both of the Policies provide identical coverage for certain special perils under Endorsement No. 3. Among other things, Endorsement No. 3 provides, in relevant part, that "this policy is extended to cover loss resulting from interruption of or interference with the business carried on by the Insured in consequence of: (a) Infectious or contagious disease manifested by any person while on the premises of the Insured or within a radius of 5 miles thereof."

17. Endorsement No. 3 further provides that, "the length of time for which loss may be claimed shall not exceed such length of time as would be required with the exercise of due diligence and dispatch to restore the Insured's business to the condition that would have existed had no loss occurred and shall include the time required to make the premises conform to the order of a competent public authority, subject to any Period of Recovery stipulated in the policy and beginning with the interruption or interference with the business."

18. A $10 million per occurrence sublimit applies to coverage under Endorsement No. 3.

19. Because HDI and Generali do not specify in their respective insurance policies that the Special Perils sublimit will be applied "in the aggregate," the $10 million dollar sublimit separately applies at each of Mandarin's four separate hotel premises.

***The Endurance and AIG Insurance Policies***

20. The insurance policies sold to Mandarin by Endurance and AIG contained the same special perils Endorsement No. 3, subject to one material difference. Unlike the HDI and Generali Policies, the Endurance and AIG policies expressly stated that coverage under the $10 million Special Perils sublimit would be calculated "in the aggregate."

21. The "in the aggregate" wording under the Endurance and AIG policies limited recovery under the Special Perils provision to a maximum loss liability of their quota share percentage of coverage, regardless of how many occurrences were alleged by Mandarin.

22. Endurance was limited to a maximum loss liability of 45% of $10 million under its policy, $4.5 million in total.

23. AIG was limited to a maximum loss liability of 20% of $10 million under its policy, $2.0 million in total.

24. Mandarin resolved its COVID-19 insurance claims with Endurance and AIG under Endorsement No. 3 subject to confidential settlement agreements with Endurance and AIG.

### *The Impact of COVID-19 Manifestations*

25. Mandarin has four separate hotel premises that were impacted by the COVID-19 pandemic and the attendant manifestations of COVID-19 by any person within a 5-mile radius of each of those hotels.

26. Mandarin Oriental Hotel Miami is located at 500 Brickell Key Drive, Miami, FL 33131.  The first COVID-19 manifestation in any person within a 5-mile radius of the Mandarin Oriental Hotel Miami location occurred on March 11, 2020.

27. Mandarin Oriental Hotel New York is located at 80 Columbus Circle at 60th Street, New York, NY 10023.  The first COVID-19 manifestation in any person within a 5-mile radius of the Mandarin Oriental Hotel New York location occurred on March 2, 2020.

28. Mandarin Oriental Hotel Washington is located at 1330 Maryland Ave., SW Washington, D.C. 20024.  The first COVID-19 manifestation in any person within a 5-mile radius of the Mandarin Oriental Hotel Washington location occurred on March 1, 2020.

29. Mandarin Oriental Hotel Boston is located at 776 Boylston Street, Boston, Massachusetts 02199. The first COVID-19 manifestation in any person within a 5-mile radius of the Mandarin Oriental Hotel Boston location occurred on February 1, 2020.

### *The Damages and Loss Sustained by Mandarin*

30. Mandarin suffered $19,373,427 in business interruption/interference losses at its Mandarin Oriental Hotel Miami location through September 2020, and it continues to suffer from such losses to this day.

31. Mandarin suffered $24,708,360 in business interruption/interference losses at its Mandarin Oriental Hotel New York location through September 2020, and it continues to suffer from such losses to this day.

32. Mandarin suffered $13,702,726 in business interruption/interference losses at its Mandarin Oriental Hotel Washington location through September 2020, and it continues to suffer from such losses to this day.

33. Mandarin suffered $12,117,924 in business interruption/interference losses at its Mandarin Oriental Hotel Boston location through September 2020, and it continues to suffer from such losses to this day.

34. Mandarin continued to suffer business interruption/interference losses beyond September 2020, totaling $222,924,637 in such losses through December 2021, and continues to suffer from such losses to date.

### *The Claims Submitted by Mandarin*

35. To date, HDI and Generali have made no payments to Mandarin in connection with its COVID claims.

36. Mandarin first notified its Insurers of its claims by email on March 24, 2020, identifying dates of loss for each location.

37. Correspondence continued among the parties through the end of 2020 regarding the claim, however neither HDI nor Generali provided Mandarin with a written coverage position letter in the normal course of handling Mandarin's claim.

38. Through September 2020, Mandarin's claim for its infectious disease business interruption/interference losses, including extra expense, resulting from COVID-19 totaled $69,902,437.

39. To date, Mandarin continues to suffer business interruption/interference losses as a result of manifestations of COVID-19 by any person within a 5-mile radius of each of Mandarin's four separate hotel premises.

40. Mandarin has complied with all applicable obligations and conditions under the Policies.

41. Mandarin has paid the applicable premiums owed under the Policies.

42. Mandarin provided timely notice of each of the four separate occurrences at issue regarding Mandarin's claims.

43. Mandarin timely submitted supplemental information about its claims and damage calculations to the Insurers, including HDI and Generali.

44. Mandarin's losses are in excess of any applicable deductible under the Policies.

### *Instructive Case from the United Kingdom Courts*

45. The United Kingdom High Court and Supreme Court have heard and decided a test case brought by the Financial Conduct Authority ("FCA") against eight insurance companies to provide authoritative legal guidance on the correct construction and interpretation of insuring

clauses covering COVID-related claims. In addition to the 21 different "lead" insurance policies sold and issued by these insurance companies, the FCA estimated some 700 types of insurance policies across over 60 different insurance companies and 370,000 policyholders could be affected by the test case. The insurance policies considered by the United Kingdom judges included multiple "disease clauses" with similar language to the HDI and Generali Policies' special perils Endorsement No. 3, providing coverage for business interruption or interference losses linked to manifestations of COVID-19 within a multiple mile radius. This test case is *FCA v. Arch Insurance (UK) Ltd & Ors* [2020] EWHC Comm 2448 (High Court Decision), and [2020] UKSC1 (Supreme Court Decision).

46. The seven judges in the High Court and the Supreme Court were unanimous in rejecting the insurance companies' arguments, both holding that each case of COVID-19 was a separate but equally effective cause of the total business interruption or interference loss from the response of the authorities and the public to the pandemic.

47. Both the High Court and the Supreme Court further held that the effects of disease cases inside a radius could not be offset against those from cases outside a radius.

48. Regarding the radius language generally, the United Kingdom Supreme Court endorsed a broad interpretation of causation as follows:

> The preferred response of the judges in the court below was to treat the radius limitation not as defining the insured peril, which they identified as the COVID-19 pandemic (at least within the whole of the UK), but as a condition for cover which required the disease first to have spread within the radius. . . In relation to the overwhelming majority of premises the radius limitation would merely define the date from which business interruption could constitute the basis for a claim. But the court below adopted as a fall-back analysis the identification of every case of COVID-19 as a separate insured peril, each just as causative of the national reaction, and leading thereby to consequential business interruption, as any other.
>
> In this court the majority have rejected the primary analysis of the court below, but in substance accepted and applied the alternative. They have, in effect, rescued the

policyholders from the at first sight sombre consequences of a narrow definition of the insured peril by a principled application of the doctrine of concurrent cause, where (in settled insurance law) the existence of one or more concurrent causes of loss, other than the insured peril itself, does not prevent cover provided that the concurrent causes are not themselves expressly excluded. . . . What is striking about the present case is that each and every separate case of COVID-19 is identified as an equally operative concurrent cause of the national response to the pandemic, so that the typical number of concurrent causes in the authorities, say two or three, is increased by orders of magnitude to something approaching, or even exceeding, a million.

*FCA v. Arch Insurance (UK) Ltd & Ors* [2020] UKSC1 ¶ 318-19.

49. The United Kingdom Supreme Court rendered its final judgment on January 15, 2021.

50. The reasoning in this test case has been adopted by courts in other common law countries, including South Africa. See e.g. *Swiss Re International SE v LCA Marrickville Pty Limited* [2021] NSD132/2021.

51. Despite the clarity that the FCA test case provided to global insurance companies as to the correct interpretation of similar infectious disease coverage provisions, HDI and Generali have persisted in maintaining their erroneous coverage positions as if such rulings had never been made.

## COUNT I
## (DECLARATORY JUDGMENT)

52. Mandarin repeats and realleges the allegations contained in paragraphs 1 through 51 as though fully set forth herein.

53. This is a claim for declaratory judgment pursuant to 28 U.S.C. § 2201 for the purpose of determining a justiciable controversy among Mandarin on the one hand, and HDI and Generali on the other.

54. Because the parties have an actual and active controversy regarding their respective rights and obligations, a declaratory judgment of the parties' respective rights and obligations is necessary.

55. Mandarin seeks a judgment declaring that, pursuant to the Policies, HDI and Generali are obligated to compensate Mandarin for the entirety of its business interruption/interference losses resulting from the infectious COVID-19 disease manifested by any person within a 5-mile radius of Mandarin's four separate hotel premises.

**COUNT II**
**(BREACH OF CONTRACT)**

56. Mandarin repeats and realleges the allegations contained in paragraphs 1 through 55 as though fully set forth herein.

57. The Policies constitute valid contracts of insurance between Mandarin and HDI and Generali, respectively, and their terms and conditions have been triggered to obligate HDI and Generali to provide insurance coverage to Mandarin.

58. Mandarin has satisfied all obligations and complied with all conditions applicable under the Policies.

59. Pursuant to the Policies, HDI and Generali are obligated to pay for the damages and losses sustained by Mandarin as a result of COVID-19 manifestations within a 5-mile radius of the premises.

60. HDI and Generali have breached their obligations under the Policies by refusing to pay Mandarin's claims in full.

61. HDI and Generali have breached the implied covenant of good faith and fair dealing present in their respective Policies by not attempting in good faith to effectuate prompt, fair and equitable settlements of claims submitted in which liability has become reasonably clear.

62. HDI and Generali have breached the implied covenant of good faith and fair dealing present in their respective Policies by failing to provide any advance payment of claims where liability has become reasonably clear.

63. HDI and Generali have breached the implied covenant of good faith and fair dealing present in their respective Policies by engaging in unreasonable delay and failing to advise Mandarin of acceptance or denial of the claim to date.

64. HDI and Generali have breached the implied covenant of good faith and fair dealing present in their respective Policies by compelling Mandarin to institute this suit to recover amounts due under the Policies by offering substantially less that the amounts owed to Mandarin.

65. HDI and Generali's failure to pay Mandarin's claims for coverage under their respective Policies lacks any reasonable basis.

66. HDI and Generali knew or were actually or implicitly aware of the lack of any reasonable basis for their failure to pay Mandarin's claims for coverage under their respective Policies.

67. HDI and Generali acted with willful disregard as to the unreasonableness of their failure to pay Mandarin's claims for coverage under their respective Policies.

68. As a result of HDI and Generali's breach of the Policies, including the implied covenant of good faith and fair dealing present therein, Mandarin has suffered, and continues to suffer, more than $222,924,637 in damages, far in excess of the applicable policy limits, with the exact amount to be proven at trial.

**PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff Mandarin demands judgment as follows:

(i) against HDI and Generali on Count I for a judgment declaring that HDI and Generali, pursuant to the terms of the Policies, are obligated to compensate Mandarin for the entirety of its business interruption/interference losses due to infectious COVID-19 disease manifested by any person within a 5-mile radius of Mandarin's four separate hotel premises;

(ii) against HDI and Generali on Count II for money damages in an amount sufficient to fully compensate Mandarin pursuant to the terms of the Policies for the entirety of its business interruption/interference losses due to infectious COVID-19 disease manifested by any person within a 5-mile radius of Mandarin's four separate hotel premises;

(iii) against HDI and Generali on Count II for consequential damages, including but not limited to, Mandarin's attorneys' fees in prosecuting this action, resulting from HDI and Generali's breach of the implied covenant of good faith and fair dealing present in their respective Policies; and

(iv) against HDI and Generali on all counts for all costs and disbursements incurred in enforcing Mandarin's rights, attorneys' fees, pre- and post-judgment interest and any other relief deemed just and appropriate by this Court.

**JURY DEMAND**

Mandarin demands trial by jury on all issues so triable.

Dated: June 13, 2023
New York, New York

By: */s/ Edward M. Joyce*_____
Edward M. Joyce
Jason B. Lissy
JONES DAY
250 Vesey Street
New York, NY 10281
Tel.: (212) 326-3939
Fax: (212) 755-7306
emjoyce@jonesday.com
jlissy@jonesday.com
bbjohnson@jonesday.com

*Attorneys for Plaintiff Mandarin Oriental, Inc.*