# JONES DAY

250 VESEY STREET • NEW YORK, NEW YORK 10281.1047

TELEPHONE: +1.212.326.3939 • JONESDAY.COM

Direct Number: 2123263834
EMJoyce@jonesday.com

September 11, 2023

**VIA ECF**

The Honorable John P. Cronan
United States District Court
Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl St.
New York, NY 10007-1312

                              Re:    *Mandarin Oriental, Inc. v. HDI Global Insurance Company et al.*, No. 1:23-cv-04951

Dear Judge Cronan:

      We represent Plaintiff Mandarin Oriental, Inc. ("Mandarin") in the above-captioned action. Pursuant to Rule 6 of the Court's Individual Rules and Practices in Civil Cases, we write on behalf of Mandarin to respond to Defendants' September 6 letter requesting permission to file a motion to dismiss. Defendants' proposed motion to dismiss is and will be meritless. Among other issues, Defendants' breach of insurance policy contract argument is based on a theory of causation endorsed by no court and expressly rejected by a unanimous United Kingdom Supreme Court decision interpreting similar language. *FCA v. Arch Insurance (UK) Ltd & Ors* [2021] UKSC1 ¶¶ 74, 212, 318–21. And Defendants' implied covenant argument ignores the actual contents of the Complaint, which set out separate facts supporting Defendants' breach of the duty of good faith and fair dealing claims, and thus is not duplicative under New York law.

      Mandarin purchased from each Defendant an insurance policy that "cover[s] loss resulting from interruption of or interference with the business carried on by the Insured in consequence of: (a) Infectious or contagious disease manifested by any person while on the premises of the Insured or within a radius of 5 miles." Compl. ¶ 16. A reasonable reader would view this language as covering COVID-19 outbreaks within a five mile radius. COVID-19 is a qualifying "disease." Persons manifested COVID-19 within five miles of Mandarin's four hotel properties. *Id.* ¶¶ 25–29. And Mandarin suffered more than $200 million in business interruption/interference losses as a consequence of this disease. *Id.* ¶ 34. So Mandarin submitted its insurance claim—but Defendants refused to pay Mandarin anything for these losses and instead stalled for years. As a result, Mandarin had no choice but to file this lawsuit.

JONES DAY

The Honorable John P. Cronan
September 11, 2023
Page 2

Now, despite these facts, Defendants continue their delay tactics by taking the extraordinary position that the Complaint fails to allege even a "*plausible* claim for breach of contract." Letter at 1. This position seems to be based on Defendants' idiosyncratic interpretation of what level of causation Mandarin must allege between the business interruption/interference losses and the infections within a five mile radius of each of its four properties. But under the parties' insurance policy contracts, Mandarin satisfies causation for its business interruption/interference losses if it can show that some persons manifested COVID-19 within five miles of Mandarin's hotel properties. The Complaint's allegations easily satisfy this causation requirement.

The United Kingdom Supreme Court's decision in *Arch Insurance* illustrates why Mandarin's position is not only plausible, but the correct interpretation of the insurance policy contracts. The court in *Arch Insurance* analyzed language similar to this case—"Disease Clauses" that "provide[d] insurance cover for business interruption loss caused by occurrence of a notifiable disease at or within a specified distance of the policyholder's business premises." UKSC1 ¶ 48. Among other things, the court analyzed "what causal link between the insured peril and interruption to the business is required." *Id.* ¶ 54. It rejected the argument the Disease Clauses covered losses "caused only by cases of disease occurring with the area [of the radius], as distinct from other cases outside the area." *Id.* ¶ 211. Instead, it held that "each and every separate case of COVID-19 is identified as an equally operative concurrence cause of the national response to the pandemic," such that if some COVID-19 infections occurred within the radius area, the affected business satisfied the Disease Clauses' causation requirement. *Id.* ¶ 319 (Briggs, J., concurrence); ¶¶ 192–212. And the court held that a business can recover the full amount of the loss even if there are multiple "effective causes" of the loss and only some are covered, as long as the other causes are not "expressly excluded." *See id.* ¶¶ 173–76 (discussing the concurrent causes doctrine); *see also id.* ¶¶ 192–212.

In contrast, Defendants' cited cases concern very different—and much narrower—insurance policy contract language and thus are irrelevant. For instance, Defendants cite *Spirit Realty Cap., Inc. v. Westport Ins. Corp.*, 568 F. Supp. 3d 470, 475 (S.D.N.Y. 2021). But that case involved an insurance provision that required the plaintiff to show "'actual not suspected presence of Communicable Disease' *and* that access to such properties was 'limited, restricted or prohibited by an order of an authorized governmental agency regulating the actual not suspected presence of communicable disease.'" *Id.* at 474–75 (holding plaintiff did not adequately allege either requirement was satisfied). Such strict requirements do not exist here: any infection within five

JONES DAY

The Honorable John P. Cronan
September 11, 2023
Page 3

miles suffices and the business interruption or interference language covers far more scenarios than just government orders caused by infections *at the insured's premises*. Defendants' other two cases are equally inapposite. *Paradigm Care & Enrichment Ctr., LLC v. W. Bend Mut. Ins. Co.*, 33 F.4th 417, 420 (7th Cir. 2022) (interpreting "Communicable Disease" provision that covered only losses incurred "when an insured's operations are temporarily shut down or suspended by order of 'a local, state, or federal board of health or similar governmental board . . . due to an outbreak of a "communicable disease" . . . at the insured premises'"); *Salon XL Color & Design Grp., LLC v. W. Bend Mut. Ins. Co.*, 598 F. Supp. 3d 590, 595 (E.D. Mich. 2022) (same).

Mandarin has also pled a plausible claim for breach of the duty of good faith and fair dealing. "In New York, all contracts imply a covenant of good faith and fair dealing in the course of performance." *511 W. 232nd Owners Corp. v. Jennifer Realty Co.*, 773 N.E.2d 496, 500 (N.Y. 2002). A breach of the duty of good faith and fair dealing is duplicative of a breach of contract claim only if "the conduct allegedly violating the implied covenant is also the predicate for breach of covenant of an express provision of the underlying contract." *Harris v. Provident Life & Acc. Ins. Co.*, 310 F.3d 73, 80 (2d Cir. 2002) (quoting *ICD Holdings S.A. v. Frankel*, 976 F. Supp. 234, 243–44 (S.D.N.Y. 1997)). That is not the case here. Mandarin has one claim based on a breach of an express provision—Defendants failure "to pay Mandarin's claims in full." Compl. ¶ 60. Mandarin has other claims based on Defendants exercising their discretion and not handling Mandarin's insurance claim in good faith, such as by "engaging in unreasonable delay and failing to advise Mandarin of acceptance or denial of the claim to date." *Id.* ¶¶ 61–64; *see Dalton v. Educ. Testing Serv.*, 663 N.E.2d 289, 291 (N.Y. 1995) ("Where the contract contemplates the exercise of discretion, this pledge includes a promise not to act arbitrarily or irrationally in exercising that discretion."). Mandarin's allegations in that regard are more than enough.

We appreciate the Court's attention to this matter.

Very truly yours,

*/s/ Edward M. Joyce*

Edward M. Joyce