UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X
                                                                 :

MANDARIN ORIENTAL, INC.,                    :

                    Plaintiff,             :

                 -v-                  :              23 Civ. 4951 (JPC)

                                  :

HDI GLOBAL INSURANCE COMPANY and   :        OPINION AND ORDER
ASSICURAZIONI GENERALI S.P.A.,       :

                                  :

                 Defendants.          :

-------------------------------------------------------------------X

JOHN P. CRONAN, United States District Judge:

       This case concerns a COVID-19-related insurance dispute between Plaintiff Mandarin Oriental, Inc. ("Mandarin") and two of its insurers, Defendants HDI Global Insurance Company ("HDI") and Assicurazioni Generali S.p.A. ("Generali"; with HDI, "Defendants"). Mandarin brings this action seeking damages and declaratory relief, alleging that Defendants failed to honor their insurance policies' "special perils" provisions by not paying their coverage obligation for business interruption losses Mandarin sustained in consequence of COVID-19 manifestations in persons within a five-mile radius of four of its hotels in the United States. HDI and Generali have moved to dismiss Mandarin's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For reasons that follow, the Court denies Defendants' motion to dismiss Mandarin's breach of contract claim in Count II. The Court also declines to exercise discretionary jurisdiction over Mandarin's declaratory judgment claim in Count I as it is duplicative of Mandarin's breach of contract claim. The Court thus *sua sponte* dismisses Count I.

### I.    Background[1]

#### A.    Facts

Mandarin is the holding company for the United States interests of the Mandarin Oriental Hotel Group, an international hotel investment and management group.  Compl. ¶ 2.  At issue in this dispute are Mandarin's hotels in Miami, Florida; New York, New York; Washington, D.C.; and Boston, Massachusetts.  *Id.*  Mandarin purchased "all risks" commercial lines insurance policies from a group of insurers that included HDI and Generali, under which the insurers had quota share percentages of coverage.  *Id.* ¶¶ 8-9.  Pursuant to this quota share arrangement, HDI was responsible for 25% of coverage, Generali was responsible for 10% of coverage, and the remainder of coverage fell to other non-party insurance companies.  *Id.* ¶ 9.

Mandarin's "all risks" policies from HDI and Generali protected "against the risk of loss and damages to Mandarin's business locations and operations."  *Id.* ¶¶ 10, 13.  Coverage under the HDI policy began on May 1, 2018, and was extended through May 1, 2020; the Generali policy's coverage began on May 1, 2016, and was extended through May 1, 2021.  *Id.* ¶¶ 10-11, 13-14.  Both policies contained Endorsement No. 3, which provided coverage for certain special perils.  *Id.* ¶ 16.  Although the policies at issue have not yet been provided to the Court, various provisions of Endorsement No. 3 are quoted in the Complaint.  As relevant here, Endorsement No. 3 provides that "this policy is extended to cover loss resulting from interruption of or interference with the business carried on by the Insured in consequence of: (a) Infectious or contagious disease manifested by any person while on the premises of the Insured or within a radius of 5 miles

---

[1] The following facts, which are assumed true for purposes of this Opinion and Order, are taken from the Corrected Complaint, Dkt. 26 ("Compl.").  *See Interpharm, Inc. v. Wells Fargo Bank, Nat'l Ass'n*, 655 F.3d 136, 141 (2d Cir. 2011) (explaining that on a motion to dismiss pursuant to Rule 12(b)(6), the court must "assum[e] all facts alleged within the four corners of the complaint to be true, and draw[] all reasonable inferences in plaintiff's favor").

thereof." *Id.* ¶ 16.  Endorsement No. 3 also states that "the length of time for which loss may be claimed shall not exceed such length of time as would be required with the exercise of due diligence and dispatch to restore the Insured's business to the condition that would have existed had no loss occurred and shall include the time required to make the premises conform to the order of a competent public authority, subject to any Period of Recovery stipulated in the policy and beginning with the interruption or interference with the business." *Id.* ¶ 17.

Endorsement No. 3 has a $10 million per occurrence sublimit, which Mandarin contends "separately applies at each of Mandarin's four separate hotel premises." *Id.* ¶¶ 18-19.  Mandarin's policies with the non-party insurers contained the same endorsement, but those policies "expressly stated that coverage under the $10 million . . . sublimit would be calculated 'in the aggregate,'" and thus limited recovery to a "maximum loss liability of [the insurers'] quota share percentage of coverage, regardless of how many occurrences were alleged by Mandarin." *Id.* ¶¶ 20-21.

As alleged, Mandarin's Miami, New York, Washington, and Boston hotels "were impacted by the COVID-19 pandemic and the attendant manifestations of COVID-19 by any person within a 5-mile radius of each of those hotels." *Id.* ¶ 25.  The first COVID-19 manifestation in someone within a five-mile radius of those hotels occurred between February and March 2020, depending on the hotel.  *Id.* ¶¶ 26-29.  Mandarin suffered tens of millions of dollars in business interruption and interference losses at these locations through September 2020, and it continued to suffer such losses as of the date of the Corrected Complaint, October 26, 2023.  *Id.* ¶¶ 30-34.

Mandarin first notified Defendants of its COVID-19-related claims by email on March 24, 2020, identifying the date of loss for each hotel location.  *Id.* ¶ 36.  Although the parties corresponded through the end of 2020 regarding the claims, as alleged, neither HDI nor Generali provided Mandarin with a written coverage position letter in the normal course of handling

Mandarin's claim. *Id.* ¶ 37. "Through September 2020, Mandarin's claim for its infectious disease business interruption/interference losses, including extra expense, resulting from COVID-19 totaled $69,902,437." *Id.* ¶ 38. To date, HDI and Generali have made no payments to Mandarin in connection with its COVID-19-related claims. *Id.* ¶ 35.

**B.    Procedural History**

On June 13, 2023, Mandarin filed its Complaint in this Court against HDI and Generali, asserting two Counts. Dkt. 1. Mandarin then filed a Corrected Complaint, without objection from Defendants, on October 26, 2023. Dkt. 26. In Count I, Mandarin seeks a declaratory judgment that "pursuant to the Policies, HDI and Generali are obligated to compensate Mandarin for the entirety of its business interruption/interference losses resulting from the infectious COVID-19 disease manifested by any person within a 5-mile radius of Mandarin's four separate hotel premises." Compl. ¶ 55. In Count II, Mandarin asserts a breach of contract claim, alleging that HDI and Generali have breached their obligations under the policies by refusing to pay Mandarin's claims in full. *Id.* ¶ 60. As part of its breach of contract claim, Mandarin also alleges that HDI and Generali "have breached the implied covenant of good faith and fair dealing present in their respective Policies by not attempting in good faith to effectuate prompt, fair and equitable settlements of claims submitted in which liability has become reasonably clear," by "failing to provide any advance payment of claims where liability has become reasonably clear," by "engaging in unreasonable delay and failing to advise Mandarin of acceptance or denial of the claim to date," and by "compelling Mandarin to institute this suit to recover amounts due under the Policies by offering substantially less than the amounts owed to Mandarin." *Id.* ¶¶ 61-64. Mandarin claims that it has suffered over $222,924,637 in damages as a result of this breach. *Id.* ¶ 68.

On October 5, 2023, HDI and Generali moved to dismiss the Corrected Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.  Dkts. 24, 25 ("Motion").  On November 3, 2023, Mandarin filed its opposition brief and a declaration from one of its attorneys, which attached as exhibits various state and city COVID-19 orders and COVID-19-related data.  Dkts. 29 ("Opposition"), 30 ("Joyce Decl.").  HDI and Generali then filed their reply on November 17, 2023.  Dkt. 31 ("Reply").  On August 28, 2024, the Court requested supplemental briefing on whether the Court should exercise its discretionary jurisdiction over Mandarin's declaratory judgment claim, Dkt. 34, and the parties submitted that briefing on September 6, 2024, Dkts. 35, 36.

## II.    Motion to Dismiss

### A.    Standard of Review

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  A complaint's "[f]actual allegations must be enough to raise the right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.

Federal Rule of Civil Procedure 8(a)(2) requires a pleading to contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Rule 8 does not demand "detailed factual allegations," *Twombly*, 550 U.S. at 555, and "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged," *Iqbal*, 556 U.S. at 678.

## B.    Breach of Contract

"To state a claim for breach of contract under New York law,[2] the complaint must allege: (i) the formation of a contract between the parties; (ii) performance by the plaintiff; (iii) failure of defendant to perform; and (iv) damages." *Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 114 (2d Cir. 2017) (internal quotation marks omitted). In the context of an alleged breach of an insurance contract, New York law places on the policyholder "the burden of showing that the insurance contract covers the loss." *Morgan Stanley Grp. Inc. v. New Eng. Ins. Co.*, 225 F.3d 270, 276 (2d Cir. 2000). "The initial interpretation of a contract is a matter of law for the court to decide." *Id.* at 275 (internal quotation marks and alteration omitted). "Insurance contracts must be interpreted according to common speech and consistent with the reasonable expectation of the average insured." *Dean v. Tower Ins. Co. of N.Y.*, 19 N.Y.3d 704, 708 (2012) (internal quotation marks omitted).

"Where a contract's language is clear and unambiguous, a court may dismiss a breach of contract claim on a Rule 12(b)(6) motion to dismiss." *Maniolos v. United States*, 741 F. Supp. 2d 555, 567 (S.D.N.Y. 2010). But "when the language of a contract is ambiguous, its construction presents a question of fact, which of course precludes summary dismissal on a Rule 12(b)(6) motion." *Id.* (internal quotation marks omitted). Defendants' motion to dismiss Mandarin's breach of contract claim turns on a question of contractual interpretation, and specifically the scope

---

[2] The parties apply New York law in their briefs, *see* Motion at 5, 11; Opposition at 3, 5, 11, 12, 18-20; Reply at 4, 6 n.5, and so the Court applies New York law in resolving Defendants' motion. *See Chau v. Lewis*, 771 F.3d 118, 126 (2d Cir. 2014) ("The parties' briefs assume that New York law controls, and such implied consent is sufficient to establish choice of law." (internal quotation marks and alteration omitted)).

of Endorsement No. 3.  Defendants urge dismissal largely based on the purported failure of the Complaint to allege a plausible connection between particular COVID-19 cases and any interruption or interference with Mandarin's business.  Mandarin resists Defendants' efforts to read such a narrow causation requirement into Endorsement No. 3 and insists that it has adequately pleaded a breach of contract.

As alleged, Endorsement No. 3 extends the policy's coverage to "loss resulting from interruption of or interference with the business carried on by the Insured in consequence of: (a) Infectious or contagious disease manifested by any person while on the premises of the Insured or within a radius of 5 miles thereof."  Compl. ¶ 16.  Defendants argue that "[t]he use of the phrase 'in consequence of' in . . . Endorsement No. 3 establishes a proximity requirement for losses to be covered under the Policy," and in particular that the policy requires Mandarin to allege a causal connection between its losses and "'any person' with COVID-19 either on or within 5 miles of a Mandarin Oriental hotel."  Motion at 5-6; *see id.* at 1-2 (arguing that "no facts are alleged which explain how the presence of the referenced individuals [with COVID-19] interrupted or interfered with Mandarin Oriental's business"); *id.* at 6 ("The Complaint does not include any factual allegations which would demonstrate a plausible causal connection between the claimed business interruption losses and 'any person' in proximity of a Mandarin Oriental hotel.").  Mandarin, on the other hand, urges the Court to read Endorsement No. 3 as contemplating a broader sense of proximate causation.  According to Mandarin, Endorsement No. 3 "does not require that any specific COVID case be the specific but-for" or exclusive cause of the loss.  Opposition at 7-8.

Because the text of Endorsement No. 3 does not unambiguously support Defendants' narrow causation reading, dismissal of Mandarin's breach of contract claim is not appropriate. While the Endorsement's "in consequence of" language certainly imposes some degree of casual

relationship, the core question is how far the causal chain reaches. A plausible reading of Endorsement No. 3 is that this provision merely requires that the business interference or interruption loss be caused by an "[i]nfectious or contagious disease," with that disease being "manifested by any person" within a five-mile radius of the hotel. Compl. ¶ 16. The Complaint plainly alleges as much. The Complaint alleges the specific date of "[t]he first COVID-19 manifestation in any person within a 5-mile radius of" each of the four hotels. *Id.* ¶¶ 26-29. The Complaint additionally alleges that these hotels "were impacted by the COVID-19 pandemic and the attendant manifestations of COVID-19 by any person within a 5-mile radius of each of those hotels." *Id.* ¶ 25; *see id.* ¶ 1 (alleging "the extensive and ongoing loss of business income sustained by Mandarin as a result of COVID-19 manifestations within a 5-mile radius of said four separate hotel premises" and "the knowledge that the hospitality industry was one of the hardest hit sectors by COVID-19"); *id.* ¶ 39 ("To date, Mandarin continues to suffer business interruption/ interference losses as a result of manifestations of COVID-19 by any person within a 5-mile radius of each of Mandarin's four separate hotel premises."). And the Complaint alleges losses that resulted from such business interruption or interference. *Id.* ¶¶ 30-34 (alleging specific monetary amounts of "business interruption/interference losses" incurred at each of the four hotels through September 2020, and continued losses suffered by Mandarin "beyond September 2020").[3]

_____

[3] These allegations are sufficient by themselves to survive dismissal. But they are bolstered by the city and state COVID-19 closure orders, which were submitted by Defendants and of which the Court takes judicial notice as public records. *See, e.g.*, *Casey v. Odwalla, Inc.*, 338 F. Supp. 3d 284, 294 (S.D.N.Y. 2018) ("Courts may take judicial notice of public documents or matters of public record."); *Porrazzo v. Bumble Bee Foods, LLC*, 822 F. Supp. 2d 406, 411 (S.D.N.Y. 2011) ("[I]t is well-established that courts may take judicial notice of publicly available documents on a motion to dismiss."). These public records show that, because of the COVID-19 pandemic, state and local governments ordered business closures and gathering restrictions in the cities where Mandarin's four hotels are located. *See* Joyce Decl. Exhs. 1 (New York Executive Order No. 202.68, dated Oct. 6, 2020), 3 (Massachusetts COVID-19 Order No. 13, dated Mar. 23, 2020), 5

In reaching this result, the Court notes that, at this pleading stage and without the full insurance contracts before it, the Court is unable to assess what level of causation would be consistent with "the reasonable expectation of the average insured" in this context. *Dean*, 19 N.Y.3d at 708 (internal quotation marks omitted). But a more expansive view of causation has been adopted by some courts in COVID-19 coverage disputes, albeit when interpreting different policy language. *See 100 Orchard St., LLC v. Travelers Indem. Ins. Co. of Am.*, 542 F. Supp. 3d 227, 229-30 (S.D.N.Y. 2021) (applying a virus exclusion provision under New York law because COVID-19 served as the "'efficient proximate cause' of any business losses resulting from government restrictions imposed in an effort to contain the virus"); *Michael J. Redenburg, Esq. PC v. Midvale Indem. Co.*, 515 F. Supp. 3d 95, 104-05 (S.D.N.Y. 2021) (collecting cases that have applied virus exclusion provisions based on proximate cause).[4] At least at the pleading stage, the "in consequence of" language is not so clear as to impose a demanding causation requirement that would preclude Mandarin's breach of contract claim, given its allegations in the Complaint. *See Maniolos*, 741 F. Supp. 2d at 567.

Defendants' other arguments to the contrary are not persuasive. The Seventh Circuit's decision in *Paradigm Care & Enrichment Center, LLC v. West Bend Mutual Insurance Company*, 33 F.4th 417 (7th Cir. 2022), on which Defendants heavily rely, *see* Motion at 6-8, is distinguishable. The policy language at issue in that case "cover[ed] lost income and extra

---

(Miami-Dade County Executive Order 09-20, Amendment No. 1, dated Mar. 25, 2020), 7 (District of Columbia Mayor's Order 2020-119, Modified Requirements to Combat Escalation of COVID-19 Pandemic During Phase Two, dated Nov. 23, 2020).

[4] Mandarin points the Court to two decisions from foreign courts which it contends have adopted its expansive view of causation when considering similar policy language. *See* Compl. ¶¶ 45-51; Opposition at 8-9. Defendants dispute the applicability of those decisions here. Reply at 5-7. The Court need not determine the persuasive value of those opinions and does not rely on them at this juncture.

expenses if a government entity shuts down business operations 'due to an outbreak' of a communicable disease '*at the insured premises*.'" *Paradigm Care & Enrichment Ctr.*, 33 F.4th at 422 (emphasis added). As the Seventh Circuit explained, that language required at least some degree of but-for causation between the shutdown order and an outbreak *at the insured premises*. *Id.* at 423. Endorsement No. 3, by contrast, covers losses "in consequence of" the manifestation of disease within a five-mile radius of the hotel properties and can plausibly be interpreted as broader in scope.

The Court also rejects Defendants' argument that the Complaint is deficient because it makes "no attempt to allege facts which would bring the claimed losses within the scope of coverage of the Policies" and only includes "conclusory allegations." Motion at 4, 10-11. Defendants seem to be asking the Court to demand a higher pleading standard than what Rule 8 requires. At this stage, Mandarin need not plead "detailed factual allegations," *Twombly*, 550 U.S. at 555, so long as the allegations in the Complaint are sufficient to "allow[] the court to draw the *reasonable inference* that the defendant[s are] liable for the" breach of contract claim that Mandarin alleges, *Iqbal*, 556 U.S. at 678 (emphasis added). As discussed above, the Complaint passes this pleading threshold. The Complaint contains allegations concerning the four Mandarin hotels that were impacted by the pandemic and the date of the first COVID-19 manifestation in someone within a five-mile radius of each hotel. Compl. ¶¶ 25-29. The Complaint further alleges the business interruption and interference losses that each location suffered during the relevant period from being impacted by the pandemic, *id.* ¶¶ 30-34, and alleges that, despite Mandarin's notification of its claims to its insurers, HDI and Generali "have made no payments to Mandarin in connection with its COVID claims," *id.* ¶¶ 35-44.

In sum, Mandarin has plausibly alleged that its business interruption losses were covered by Endorsement No. 3, and its allegations sufficiently give Defendants "fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (internal quotation marks and alteration omitted).

## C.    Breach of Implied Covenant of Good Faith and Fair Dealing

Under New York law, "[g]enerally, a claim for breach of an implied covenant of good faith and fair dealing does not provide a cause of action separate from a breach of contract claim" because a "'breach of that duty is merely a breach of the underlying contract.'" *Dorset Indus., Inc. v. Unified Grocers, Inc.*, 893 F. Supp. 2d 395, 405 (E.D.N.Y. 2012) (quoting *Harris v. Provident Life & Acc. Ins. Co.*, 310 F.3d 73, 80 (2d Cir. 2002)). "To establish a claim for breach of the implied covenant of good faith and fair dealing, a plaintiff must establish the following: (1) defendant must owe plaintiff a duty to act in good faith and conduct fair dealing; (2) defendant must breach that duty; and (3) the breach of duty must proximately cause plaintiff's damages." *Schonfeld v. Wells Fargo Bank, N.A.*, No. 15 Civ. 1425 (MAD), 2017 WL 4326057, at *5 (N.D.N.Y. Sept. 27, 2017). Defendants fault Mandarin's pleading of a breach of the implied covenant as containing "conclusory allegations" and assert that this theory is "indistinguishable from [Mandarin's] claim for breach of the insurance contract." Motion at 11.

Starting with Defendants' contention that this theory of liability is supported by only "conclusory allegations," Motion at 11, the Complaint alleges sufficient facts to support a breach of the implied covenant. Mandarin alleges, *inter alia*, that it notified HDI, Generali, and its other insurers of its claims by March 24, 2020, that it identified the details of loss for each hotel location, that it timely submitted to Defendants supplemental information about its claims and damage calculations, that it had paid all applicable premiums under the policies and otherwise complied

11

with any obligations or conditions of the policies, and that neither Defendant provided Mandarin with a written coverage position letter in the normal course of handling its claim or otherwise attempted to satisfy its coverage obligation. Compl. ¶¶ 1, 35-44. The Complaint further alleges the specific conduct that triggered breach of the implied duty. *See* Compl. ¶¶ 61-64 (alleging that "HDI and Generali have breached the implied covenant of good faith and fair dealing present in their respective Policies by not attempting in good faith to effectuate prompt, fair and equitable settlements of claims submitted in which liability has become reasonably clear[,] . . . by failing to provide any advance payment of claims where liability has become reasonably clear[,] . . . by engaging in unreasonable delay and failing to advise Mandarin of acceptance or denial of the claim to date[,] . . . [and] by compelling Mandarin to institute this suit to recover amounts due under the Policies by offering substantially less that the amounts owed to Mandarin").

Defendants' argument that a breach of the implied duty claim should be rejected as duplicative of breach of contract, Motion at 11; Reply at 9-10, also fails. Defendants are correct that New York law "does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based upon the same facts, is also pled." *Harris*, 310 F.3d at 81; *see also Miller v. Wells Fargo Bank, N.A.*, 994 F. Supp. 2d 542, 555 (S.D.N.Y. 2014) ("[A] claim for breach of the implied covenant must be dismissed where it is merely duplicative of a breach of contract claim."). But here, the breach of the implied duty does not "clearly rest on the same alleg[ations]" as the breach of contract. *Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 125 (2d Cir. 2013). While the breach of contract theory rests on a failure to pay for the losses covered under Endorsement No. 3, the breach of the implied duty allegedly arose from Defendants' bad faith in engaging with Mandarin's claim and in delaying their claims handling processes. *See* Compl. ¶¶ 60-67; *see also Bi-Economy Mkt., Inc. v. Harleysville Ins. Co.*

*of N.Y.*, 886 N.E.2d 127, 131 (N.Y. 2008) ("[I]mplicit in contracts of insurance is a covenant of good faith and fair dealing, such that a reasonable insured would understand that the insurer promises to investigate in good faith and pay covered claims." (internal quotation marks omitted)). Therefore, as pleaded in the Complaint, Mandarin's theory for a breach of the implied duty is not duplicative of its general breach of contract theory. *See Advanced Oxygen Therapy Inc. v. Orthoserve Inc.*, 572 F. Supp. 3d 26, 35 (S.D.N.Y. 2021) ("[A] claim for breach of the implied covenant of good faith and fair dealing is not duplicative when the claim depends on facts in addition to those that might support a breach of contract claim." (internal quotation marks omitted)); *Endemann v. Liberty Ins. Co.*, 390 F. Supp. 3d 362, 379 (N.D.N.Y. 2019) (allowing both a breach of contract claim and breach of the implied covenant claim to proceed "[b]ecause the breach of the implied covenant of good faith and fair dealing claim pleads conduct by Defendant different than alleged in the breach of contract claim, and because Plaintiff may be entitled to different relief than allowed under a breach of contract claim").

### III.    Jurisdiction Over Mandarin's Declaratory Judgment Claim

In Count I, Mandarin proceeds under the Declaratory Judgment Act ("DJA"), 28 U.S.C. § 2201, seeking a declaration "that, pursuant to the Policies, HDI and Generali are obligated to compensate Mandarin for the entirety of its business interruption/interference losses resulting from the infectious COVID-19 disease manifested by any person within a 5-mile radius of Mandarin's four separate hotel premises." Compl. ¶ 55.

"The DJA provides that '[i]n a case of actual controversy within its jurisdiction, . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." *Admiral Ins. Co. v. Niagara Transformer Corp.*, 57 F.4th 85, 92 (2d Cir. 2023) (alterations in original) (quoting

28 U.S.C. § 2201(a)).  Given its permissive language that a court *may* declare rights under its auspices, the DJA "confers a discretion on the courts rather than an absolute right upon the litigant." *Frontier Airlines, Inc. v. AMCK Aviation Holdings Ireland Ltd.*, 676 F. Supp. 3d 233, 254 (S.D.N.Y. 2023) (quoting *Pub. Serv. Comm'n of Utah v. Wycoff Co., Inc.*, 344 U.S. 237, 241 (1952)).  Consequently, the Second Circuit "ha[s] consistently interpreted this permissive language as a broad grant of discretion to district courts to refuse to exercise jurisdiction over a declaratory action that they would otherwise be empowered to hear." *Admiral Ins. Co.*, 57 F.4th at 96 (internal quotation marks omitted).  The Supreme Court has similarly "acknowledg[ed] . . . the unique breadth of [a federal court's] discretion to decline to enter a declaratory judgment." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 287 (1995).

In *Admiral Insurance Company*, the Second Circuit advised that district courts should consider the following criteria "to the extent they are relevant in a particular case" in deciding whether to exercise discretion to decline jurisdiction under the DJA, 57 F.4th at 99 (internal quotation marks omitted):

> (1) whether the declaratory judgment sought will serve a useful purpose in clarifying or settling the legal issues involved; (2) whether such a judgment would finalize the controversy and offer relief from uncertainty; (3) whether the proposed remedy is being used merely for procedural fencing or a race to res judicata; (4) whether the use of a declaratory judgment would increase friction between sovereign legal systems or improperly encroach on the domain of a state or foreign court; (5) whether there is a better or more effective remedy; and (6) whether concerns for judicial efficiency and judicial economy favor declining to exercise jurisdiction.

*Id.* at 99-100 (alterations, citation, and internal quotation marks omitted).  And "[i]nherent in district courts' broad discretion to decline jurisdiction under the DJA is a similarly broad discretion to weigh the[se] factors . . . .  Thus, no one factor is sufficient, by itself, to mandate that a district court exercise—or decline to exercise—its jurisdiction to issue a declaratory judgment." *Id.* at 100

(alteration, citation, and internal quotation marks omitted). "[T]hese factors are non-exhaustive, with district courts retaining wide latitude to address other factors as relevant to the ultimate question of whether the normal principle that federal courts should adjudicate claims over which they have jurisdiction should yield to considerations of practicality and wise judicial administration in a particular case." *Id.* (alterations, citation, and internal quotation marks omitted).

"[C]ourts routinely dismiss requests for declaratory judgment when the parties' rights will be adjudicated through a breach of contract claim in the same action." *Com. Lubricants, LLC v. Safety-Kleen Sys., Inc.*, No. 14 Civ. 7483 (MKB), 2017 WL 3432073, at *17 (E.D.N.Y. Aug. 8, 2017) (collecting cases). In Count I, Mandarin seeks a declaration pertaining to the same question of insurance contract coverage that will necessarily be answered in resolving its breach of contract claim in Count II. Adjudication of Count I thus "would serve no purpose" because "[t]he claim for declaratory judgment would not clarify any uncertainty in the parties' legal relations that would otherwise remain unresolved as part of the breach of contract claim." *Optanix, Inc. v. Alorica Inc.*, No. 20 Civ. 9660 (GHW), 2021 WL 2810060, at *4 (S.D.N.Y. July 6, 2021) (collecting cases which have dismissed declaratory judgment claims as duplicative). In addition, given the damages available in Count II, there exists a "better or more effective remedy." *Admiral Ins. Co.*, 57 F.4th at 100 (internal quotation marks omitted).

In their supplemental briefs, the parties agreed with the general framework for this analysis. *See* Dkts. 35, 36. Mandarin's supplemental brief acknowledges that "resolution of its breach of contract claim will necessarily resolve the issue on which it seeks declaratory judgment, and the breach of contract claim may offer a better or more effective remedy, given the availability of monetary damages," and agrees that "the Court would be within its discretion to decline to exercise

jurisdiction over the declaratory judgment claim in addition to resolving the breach of contract claim." Dkt. 36 at 1 (citation and internal quotation marks omitted).  After weighing the relevant factors under *Admiral Insurance Company*, the Court declines to exercise discretionary jurisdiction over Mandarin's declaratory judgment claim and dismisses Count I without prejudice.

### IV.    Conclusion

For the foregoing reasons, Defendants' motion to dismiss is denied.  The Court *sua sponte* dismisses without prejudice Count I of the Complaint.  The Clerk of Court is respectfully directed to close Docket Number 24.

SO ORDERED.

Dated: September 19, 2024
        New York, New York

_____
JOHN P. CRONAN
United States District Judge