JONES DAY

250 VESEY STREET • NEW YORK, NEW YORK 10281.1047

TELEPHONE: +1.212.326.3939 • JONESDAY.COM

DIRECT NUMBER: +1.212.326.3834
EMJOYCE@JONESDAY.COM

April 18, 2025

The Honorable Sarah L. Cave
Daniel Patrick Moynihan Courthouse
500 Pearl Street, Room 1670
New York, NY 10007

Re: *Mandarin Oriental, Inc. v. HDI Global Insurance Company et al.*, C.A. No. 1:23-cv-04951-JPC-SLC, Plaintiff's Letter Motion to Compel Production of Documents

Dear Judge Cave:

Pursuant to Your Honor's order (ECF 58), Individual Practices in Civil Cases, and as discussed at the April 7, 2025 telephonic status conference in the above referenced matter, Plaintiff Mandarin Oriental, Inc. ("Mandarin") submits this letter motion to compel Defendants' production of documents related to reserves and reinsurance communications, as well as certain documents withheld on the basis of attorney-client privilege and attorney work product.

**Background**

This lawsuit involves a dispute over insurance coverage for business interruption losses sustained by Mandarin at four of its hotels as a result of COVID-19. Mandarin purchased "all risks" commercial lines insurance policies from Defendants (the "Policies").[1] The Policies contained a "special perils" endorsement, which provides coverage for business interruption losses in consequence of infectious diseases manifested by any person within a 5 mile radius of Mandarin's hotels located in Miami, New York, Washington, and Boston.[2] Coverage for these losses under the Policies was on a "per occurrence" basis. Each Defendant had a quota share percentage of coverage, with HDI responsible for 25% and Generali responsible for 10%, with other insurance companies responsible for the remainder.[3] As a result, given that there were four hotels in four separate locations suffering from four loss events, Defendants are liable under the Policies for their respective 25% and 10% shares of the $10 million sublimit for each occurrence.

Mandarin first notified the Defendants of its claims under the Policies by email on March 24, 2020.[4] Correspondence regarding Mandarin's claim continued among the parties through the end of 2020, with Mandarin providing significant amounts of information in response to numerous information requests from Defendants.[5] Mandarin complied with all applicable obligations and conditions under the Policies.[6] As of September 2020, Mandarin's business interruption losses for

[1] *See* Corrected Complaint, ECF 26, ¶ 8.
[2] *Id.* ¶¶ 16-17, 26-29.
[3] *Id.* ¶ 9.
[4] *Id.* ¶ 36.
[5] *Id.* ¶¶ 37, 43.
[6] *Id.* ¶¶ 40, 43.

each location were well in excess of the Policies' $10 million sublimit for each occurrence at the four hotel locations. Mandarin submitted ample documentation to the Defendants supporting these losses.[7] Despite this, Defendants never provided a formal coverage opinion, instead continually demanding more, increasingly irrelevant, information. To date, Defendants have not provided a formal coverage opinion outside of the mediation or litigation context.

This lawsuit primarily concerns four issues in dispute between the Parties: (1) what triggers coverage under the Policies' special perils endorsement; (2) the number of occurrences that constitute Mandarin's claim; (3) the applicable period of recovery; and (4) whether Defendants adjusted Mandarin's claim in bad faith.

**The Discovery Dispute**

The instant motion to compel seeks production of three categories of information which Defendants have refused to produce in response to Mandarin's discovery requests: (1) reinsurance information; (2) reserve information and (3) certain information withheld under the attorney-client privilege. Documents within each of these categories of information are potentially relevant to one or more disputed issues in this lawsuit. For the reasons provided in more detail below, Mandarin respectfully requests Defendants be ordered to produce the requested information.

**Reinsurance Communications Should Be Produced**

Defendants have refused to produce any communications concerning reinsurance they obtained on the Policies. This is contrary to New York law. Courts here have "found that reinsurance information is relevant" to insurance coverage disputes, especially when an insured alleges bad faith.[8] Reinsurance information, including reinsurance communications, often shed light on Defendants' internal evaluations of their own coverage obligations.[9] Differences between internal assessments on the one hand, and the coverage position (or the lack thereof) that Defendants communicated to Mandarin on the other hand, is relevant to whether Defendants adjusted Mandarin's claim in bad faith.[10] This is especially applicable to Defendants' position concerning the number of occurrences, as the limited reinsurance information Defendants have produced indicates that Defendants' reinsurance policies, like the Policies Defendants sold to Mandarin, apply on a per-occurrence basis. Reinsurance communications may reveal relevant evidence of Defendants' "understanding of the underlying claims and may contain admissions that the[] claims are covered" on a per-occurrence basis.[11] Further, such communications may also

[7] *See* Ex. A, Mandarin Letter to McLarens dated October 23, 2020.
[8] *See 99 Wall Dev. Inc. v. Allied World Specialty Ins. Co.*, No. 18-CV-126 (RA) (KHP), 2019 WL 2482356, at *5 (S.D.N.Y. June 14, 2019).
[9] *Id.*
[10] *Id.*
[11] *Fireman's Fund Ins. Co. v. Great Am. Ins. Co. of N.Y.,* 284 F.R.D. 132, 138 (S.D.N.Y. 2012) (quoting *Stonewall Ins. Co. v. Nat'l Gypsum Co.*, No. 86 Civ. 9671(SWK), 1988 WL 96159, at *5 (S.D.N.Y. Sept. 6, 1988)); *see also*

reveal whether Defendants had come to a coverage position internally while representing to Mandarin that such determination was still pending.[12] That information should be produced.[13]

**Reserve Information Should Be Produced**

Defendants have also refused to produce any documents or communications concerning their reserves for Mandarin's claims under the Policies. New York courts routinely hold that reserves are relevant to bad faith claims.[14] Here, Defendants' bad faith is shown by their failure to provide any coverage position to Mandarin or advance payment, despite Mandarin having provided ample information in response to Defendants' numerous requests. Reserves have probative value "especially where, as here, a bad faith refusal to pay is alleged."[15] Reserve information may also provide valuable, relevant insight as to Defendants "own beliefs about coverage and their liability," and how such beliefs motivated them to act in bad faith against Mandarin's interests.[16] Defendants should produce reserve information.

**Defendants Improperly Withhold A Significant Number of Documents Under the Attorney-Client Privilege and Attorney Work Product Doctrine**

There are three separate categories of documents Defendants have withheld under either the attorney-client privilege or work product doctrine that do not appear to qualify under either privilege under New York law.

---

*99 Wall*, 2019 WL 2482356, at *5 (holding reinsurance information is relevant because it would illuminate "[d]ifferences between [the insurer's] internal assessment and coverage position" that may be relevant to bad faith).

[12] *Id*.

[13] Mandarin has been consistent in its requests for reinsurance communications from Defendants since its initial request for production of documents on December 6, 2024. *See* Ex. B, Defendants' February 28, 2025 Supplemental Responses and Objections to Mandarin's First Set of Requests for Production, Request 12. The Parties met and conferred on this issue on several occasions, and Defendants amended their discovery responses, agreeing to produce documentation regarding their reinsurance agreements, but not agreeing to produce reinsurance communications. *Id*. At the April 7, 2025 status conference, the parties agreed to identify reinsurance communications for in camera review, and to brief the issue. Mandarin requested Defendants identify representative reinsurance communications on April 11th, as Mandarin has no insight as to what communications may exist (none were identified on Defendants' privilege logs). Defendants have not done so. At 10:00 am on April 18th, Defendants raised for the first time that this issue is not ripe for resolution. Mandarin strongly disagrees.

[14] *See Discover Prop. & Cas. Co. v. Nat'l Football League,* No. 652933/2012, 2019 WL 4899032, at *4 (N.Y. Sup. Ct. Oct. 4, 2019) (affirming Referee's decision to compel production of reserves for insurers). Courts in the Southern District of New York "have found reserve information relevant where bad faith has been alleged." *99 Wall*, 2019 WL 2482356, at *4 (citing *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. H & R Block, Inc.*, No. 12 CIV. 1505(AT)(HBP), 2014 WL 4377845, at *4 (S.D.N.Y. Sept. 4, 2014); *Fireman's Fund*, 284 F.R.D. at 139; and *866 E. 164th St., LLC v. Union Mut. Fire Ins. Co.*, No. 16-CV-03678 (SN), 2016 WL 6901321, at *2 (S.D.N.Y. Nov. 23, 2016)).

[15] *Nat'l Union Fire*, 2014 WL 4377845, at *4.

[16] *Fireman's Fund*, 284 F.R.D. at 139.

First, Defendants have withheld or redacted numerous communications and/or documents exchanged with their adjusters, McLaren's,[17] and outside accountants, JS Held,[18] without any attorneys present on the communication. But adjusters, "although an agent of the insurer, would not be expected to be part of a discussion about the legal issues in this case," and thus "[t]he attorney-client privilege does not shield such discussions from disclosure."[19][20]

Second, Defendants have withheld or redacted numerous communications and/or documents where the only individuals that appear are non-attorney employees of HDI and Generali who are not attorneys. Attorney-client privilege requires that the party seeking to withhold or redact a document "must show that it is a confidential communication between the attorney and the client, made in the context of legal advice or services."[21] No such showing has been made for these documents, despite Defendants' explanatory log entries to the contrary.

Finally, Defendants rely on both the attorney-client privilege and work product doctrine to withhold a large number of documents involving the adjustment of Mandarin's insurance claims. This is not proper under New York law. Regarding attorney-client privilege, when insurance companies retain counsel to provide a coverage opinion, and such counsel are engaged in claims handling (an ordinary business activity for an insurance company), "[d]ocuments prepared in the ordinary course of an insurers' investigation of whether to pay or deny a claim are not privileged, and do not become so 'merely because [the] investigation was conducted by an attorney'".[22] The unredacted portions of the small amount of documents Defendants have produced to date indicate that its outside counsel, Paul Sullivan, was the *de facto* primary adjuster of Mandarin's claim on behalf of HDI and Generali.[23] Despite utilizing McLarens as an outside adjuster, McLarens was

[17] *See, e.g.*, Ex. C, McLarens Privilege Log, BegBates Nos. McLarens_000075, McLarens_000190 (Rocco Bianchi, Jason Dei, Aaron McCord, and Vito Russo are not attorneys)

[18] *See, e.g.*, Ex. D, J.S. Held Privilege Log (Jared O'Connor, Bruno Graizzaro, and other J.S. Held employees are not attorneys);

[19] *See, e.g.*, *SR Int'l Bus. Ins. Co. v. World Trade Ctr. Props. LLC,* No. 01 CIV. 9291 (JSM), 2003 WL 193071, at *2 (S.D.N.Y. Jan. 29, 2003); *see also Constr. Indus. Servs. Corp. v. Hanover Ins. Co*., 206 F.R.D. 43, 47–48 (E.D.N.Y. 2001) (finding an outside accountant was not within the attorney-client privilege when the accountant "offered broad-based litigation advice to the client" that was not "crucial to the lawyer's assessment of the case").

[20] In accordance with Your Honor's Order (ECF 58), Mandarin proposed ten documents for in-camera review on April 11, 2025, five of which related to reserves, and five of which related to privilege assertions. At approximately 3:30pm on April 17th, Defendants agreed to remove redactions for the five documents selected by Mandarin which related to general privilege issues (for which Mandarin has identified replacements), as well as similar redactions for other documents. As Mandarin does not yet know the scope of the documents which will now be produced, and has not received amended privilege logs to that effect, Mandarin has retained these arguments in their motion to compel.

[21] Similar entries without corresponding attorney authors or recipients can also be found on Ex. E, HDI Privilege Log and Ex. F, Generali Privilege Log. *See, e.g.*, HDI Priv0001, HDI Priv002, HDI Priv0038, HDI Priv0041, HDI Priv0136, Generali PRIV0006, Generali PRIV0044-46, Generali PRIV0053.

[22] *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. TransCanada Energy USA, Inc.* (*TransCanada II*), 119 A.D.3d 492, 493 (N.Y. App. Div. 1st Dep't 2014) (citation omitted).

[23] *See* Ex. E, HDI Privilege Log. Entries for redacted documents beginning with Bates Nos. HDI001196, HDI001200, and HDI001205, indicate that legal advice from counsel was reflected in correspondence as early as March 30, 2020. *Id.* Paul Sullivan is specifically identified on a withheld document as early as April 30, 2020. *Id.*,

never authorized to come to a determination as to a coverage position, and held their file "in abeyance" as early as November 12, 2020.[24] This is a classic example of an insurance company attempting to shield its claims adjustment file through inclusion of attorneys into ordinary business functions.[25] This is improper under New York law and these documents should be produced.

Regarding Defendants reliance on the work product doctrine, under New York law, "as a general rule, an insurance company's investigation 'undertaken to determine whether there is coverage, [and] whether the claim should be paid . . . is not undertaken in anticipation of litigation.'"[26] Thus, work product ordinarily does not protect documents prepared prior to the insurer's denial of coverage.[27] While Defendants have never formally denied coverage, the earliest point Defendants could even claim they did was their February 10, 2023 mediation statement, when they first made clear that Mandarin's claim did not fall within the scope of coverage provided under the special perils endorsement to the Policies. Thus, work product cannot be asserted for documents or communications prior to that date.

**<u>Conclusion</u>**

Defendants' reserve and reinsurance information is relevant and discoverable under New York law given Defendants' bad faith in adjusting Mandarin's claim. Further, many documents over which privilege has been asserted do not qualify for such protection under New York law. Mandarin respectfully requests Your Honor compel defendants to produce documents related to reserves and reinsurance, remove assertions of work product protection for documents or communications prior to February 10, 2023, and conduct an in-camera review of any documents Defendants continue to contend are subject to attorney-client privilege.

---

HDI Privilege Log, Priv Doc ID HDI Priv0058. This, in conjunction with McLarens being explicitly instructed to stand down *that same day* with respect to accounting discussions with Mandarin to move forward on claim adjustment, strongly indicates that Paul Sullivan led the claims adjustment process. *See* Ex. G, email from HDI to McLarens dated April 30, 2020, at HDI001781.

[24] *See* Ex. H, McLarens Report 3 dated November 12, 2020, at McLarens_000451; *see also* Ex. I, McLarens Report 6 dated April 15, 2022, at McLarens_000330 (showing that the file was still held "in abeyance" as a coverage position was pending). As stated by McLarens in their email accompanying Report 3, this would be "essentially placing the 'ball in the insurer's court'" on determining coverage for this COVID 19 claim. *See* Ex. J, Internal McLarens Email dated April 12, 2021, at McLarens_000445.

[25] *See Nat'l Union Fire Ins. Company of Pittsburgh, Pa. v. TransCanada Energy USA, Inc.* (*TransCanada I*), Nos. 650515/2010, 400759/2011, 2013 WL 4446917 (N.Y. Sup. Ct. Aug. 15, 2013) (holding that market insurers who hired attorneys that were primarily working to determine whether to deny coverage, an ordinary business activity for an insurance company, could not shield documents pre-dating the decision to deny coverage on attorney-client privilege grounds in most cases, or on work product grounds in any instance), *aff'd*, 119 A.D.3d 492.

[26] *866 E. 164th St.*, 2016 WL 6901321, at *1 (citation omitted); *see also TransCanada II*, 119 A.D.3d at 493; *99 Wall*, 2019 WL 2482356, at *5 (holding counsel's drafts of letters for McLarens to send to the Insured, "would not be work product because they would not have been prepared differently in the normal course of business").

[27] *See TransCanada I*, 2013 WL 4446917, ("An insurance company cannot claim documents are prepared in anticipation of litigation until it makes a firm decision to deny coverage.").

Respectfully Submitted,

*/s/ Edward M. Joyce*

Edward M. Joyce