UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
                                                                       :
MANDARIN ORIENTAL, INC.,                                               :
                                                                       :
                    Plaintiff,                                         :
                                                                       :
           -v-                                                         :    23 Civ. 4951 (JPC) (SLC)
                                                                       :
                                                                       :    OPINION AND ORDER
HDI GLOBAL INSURANCE COMPANY and                                       :
ASSICURAZIONI GENERALI S.P.A.,                                         :
                                                                       :
                    Defendants.                                        :
                                                                       :
-----------------------------------------------------------------------X

JOHN P. CRONAN, United States District Judge:

      In this action, Plaintiff Mandarin Oriental, Inc., has sued two of its insurers, HDI Global Insurance Company ("HDI") and Assicurazioni Generali S.p.A. ("Generali") (together, "Defendants"), over claims relating to coverage for losses incurred during the Covid-19 pandemic. With the case now in discovery, Plaintiff seeks to compel Defendants to produce documents that they have withheld as privileged. The Honorable Sarah L. Cave, to whom this case was referred for general supervision of pretrial proceedings, reviewed *in camera* ten exemplar documents, along with any attachments, and granted in part and denied in part Plaintiff's motion in Opinions and Orders dated June 10, 2025 (the "June 10 Order"), *Mandarin Oriental, Inc. v. HDI Glob. Ins. Co.*, No. 23 Civ. 4951 (JPC) (SLC), 2025 WL 1638071 (S.D.N.Y. June 10, 2025), and June 18, 2025, Dkt. 72 ("June 18 Order"). Defendants now object to Judge Cave's rulings on the attorney-client privilege and work product doctrine, and her order that they produce reserve information. Dkt. 75 ("Objection"). For reasons that follow, the Court substantially overrules the Objection, while

authorizing limited additional redactions and clarifying that Defendants may apply one of the authorized redactions throughout the documents.

## I. Background

The Court presumes the parties' familiarity with Plaintiff's allegations and this case's procedural history, as set out in its Opinion and Order of September 19, 2024, resolving Defendants' motion to dismiss the Complaint. *Mandarin Oriental, Inc. v. HDI Glob. Ins. Co.*, No. 23 Civ. 4951 (JPC), 2024 WL 4252562 (S.D.N.Y. Sept. 19, 2024). After denying Defendants' motion to dismiss, the Court referred the case to Judge Cave for general supervision of pretrial proceedings. Dkt. 38.

On April 18, 2025, while discovery was ongoing before Judge Cave, Plaintiff moved to compel Defendants to produce "documents related to reserves and reinsurance communications, as well as certain documents withheld on the basis of attorney-client privilege and attorney work product." Dkt. 59. Defendants opposed that motion on April 25, 2025, citing relevance and privilege grounds. Dkt. 62.

After reviewing *in camera* a set of exemplar documents (the "Exemplars"), conducting a conference with the parties, and receiving translations of foreign language portions of the Exemplars, Judge Cave issued an Opinion and Order on June 10, 2025, ruling that Defendants shall produce communications concerning reinsurance, reserves, and certain emails from within Exemplars 6-10. *Mandarin Oriental*, 2025 WL 1638071, at *11. In reaching these holdings, Judge Cave first rejected Defendants' relevance challenges, concluding communications concerning reinsurance and reserves must be produced "unless another viable ground for withholding, such as privilege, exists." *Id.* at *6-7. As to Defendants' contention that reserve information nonetheless may be protected by the attorney-client privilege and work product privilege, Judge Cave

determined that Defendants failed to proffer evidence such as a declaration or deposition testimony explaining why either privilege applies, and observed that the Exemplars discussing reserves did not on their face establish that they are privileged. *Id.* at *7-8. Judge Cave explained that the work product privilege does not apply because Defendants set reserves in the ordinary course of business, not in anticipation of litigation, and the attorney-client privilege does not apply because the communications "do not appear to contain information exchanged between client and counsel 'that was intended to be maintained in confidence.'" *Id.* at *8 (quoting *99 Wall Dev. Inc. v. Allied World Specialty Ins. Co.*, No. 18 Civ. 126 (RA) (KHP), 2019 WL 2482356, at *5 (S.D.N.Y. June 14, 2019)). Judge Cave proceeded to set out her conclusions with respect to Exemplars 6 through 10, rejecting certain proposed redactions and approving others as protected by the attorney-client privilege. *Id.* at *8-10. Defendants have not objected to any of Judge Cave's privilege determinations as to Exemplars 6 through 10. *See generally* Objection.

After Defendants sought clarification about attachments to the Exemplars that they had omitted in their earlier filings, Dkt. 70, Judge Cave convened another conference, reviewed *in camera* Exemplars 1 through 5 with their attachments,[1] and issued a second Opinion and Order on June 18, 2025. In the June 18 Order, Judge Cave permitted redactions of certain sections of these Exemplars as protected by the attorney-client privilege. June 18 Order at 2-5. The documents that Judge Cave considered in the June 18 Order, and her conclusions with respect to each, are summarized below:

- Exemplar 1: This is an email chain from November 2021 among HDI employees discussing HDI's negotiations with Plaintiff and the setting of reserves for Plaintiff's

---

[1] Each attachment appears to consist of a document that was attached to an email in the Exemplar, along with a reproduction of part or all of the Exemplar itself.

claims. One email (pages 5-8) contains a section entitled "Coverage Counsel Conclusion based on Coverage in HDI Policy," which summarizes legal advice HDI had received. Judge Cave identified that section as protected by the attorney-client privilege. *Id.* at 2 ("Because this portion of Exemplar 1 contains a summary of HDI's counsel's legal advice, it is protected by the [attorney-client privilege] and may properly be redacted." (citation omitted)). She concluded that the rest of the email chain is discoverable. *Id.* ("Accordingly, Defendants may redact from Exemplar 1 only the text on page 7 from 'Coverage Counsel Conclusion . . .' through '. . . to the Insurers[,]' and must produce the balance of Exemplar 1." (ellipses and brackets in original)).

- Exemplar 1, Attachment 1: The first attachment to Exemplar 1 is part of the same November 2021 email chain that is Exemplar 1, including the same "Coverage Counsel Conclusion" section (pages 3-4) that Judge Cave determined is privileged. This attachment also has a twenty-page letter from HDI's attorney, Paul Sullivan of Zelle LLP, to an HDI employee (the "September 3 Zelle Opinion") (pages 6-25). Judge Cave concluded that the September 3 Zelle Opinion is privileged and may be withheld from discovery. *Id.* Judge Cave noted that HDI's policy (pages 26-101), which followed the September 3 Zelle Opinion, is not privileged and must be produced. *Id.*

- Exemplar 1, Attachment 2: The second attachment to Exemplar 1 also has part of the same email thread in Exemplar 1, including the "Coverage Counsel Conclusion" section (pages 5-6) and the discussions of HDI's negotiations with Plaintiff and the setting of reserves for Plaintiff's claims. The attachment's final page (page 8) is an internal HDI memorandum, dated November 18, 2021 (*i.e.*, approximately nineteen

4

months before the commencement of this action), titled "Settlement Authority," and authorizing a global settlement of Plaintiff's claims up to a specified amount. Judge Cave concluded that the "Coverage Counsel Conclusion" section may be redacted on attorney-client privilege grounds, and the remainder of the email chain is discoverable. *Id.* at 3.

- Exemplar 2, Attachment 1: This attachment to Exemplar 2 is identical to Attachment 1 to Exemplar 1, and Judge Cave applied the same conclusion. *Id.*

- Exemplar 3: This is an email thread among HDI's employees discussing its reserve for Plaintiff's claims. The thread also includes a section entitled "Coverage Counsel Conclusion" (page 4), which repeats most of the material from the section of the same name in Exemplar 1 and its attachments. Judge Cave authorized Defendants to redact one paragraph of that section, from "Counsel opinion" through "to the Insurers[,]" because it "contains a summary of HDI's counsel's legal advice" and thus is protected by the attorney-client privilege. *Id.* at 3-4. Judge Cave required production of the balance of Exemplar 3. *Id.* at 4.

- Exemplar 4: This is a two-page "COVID-19 Claim Summary" prepared by Generali. It recapitulates Plaintiff's claims, states Generali's net reserve, discusses business strategy, and quotes Generali's counsel. Judge Cave authorized Defendants to redact the quotation that begins "To quote counsel" through "'in certain jurisdiction." (page 1), because that quotation contains legal advice from Generali's lawyer. *Id.* at 4. Judge Cave determined that Defendants must produce the remainder of Exemplar 4. *Id.*

- Exemplar 5, Attachment 1: Attachment 1 to Exemplar 5 is an email thread involving individuals with various entities. The chronologically last email in the thread (page 1)

5

is a message from a Generali employee, David Lammond, to Mr. Sullivan, attaching a draft Settlement Agreement and Release (pages 12-16) and appearing to solicit Mr. Sullivan's legal advice as to that document. The remainder of the thread features emails among employees of Generali, Marsh, and HDI discussing Plaintiff's claims and scheduling logistics. Defendants have not argued that anyone in those messages was an attorney or was soliciting or providing legal advice. *See generally* Objection. Judge Cave concluded that the email from Mr. Lammond to Mr. Sullivan and the draft Settlement Agreement and Release are protected by the attorney-client privilege and authorized their redaction. June 18 Order at 4.

- Exemplar 5, Attachment 2: The second attachment to Exemplar 5 consists of emails including the thread in Attachment 1 to Exemplar 5. Attachment 2 consists of emails among Generali employees (pages 1-3), messages between Mr. Lammond and Mr. Sullivan including the message in Attachment 1 (pages 3-6), and messages between Mr. Lammond and a Marsh employee (pages 7-16), as well as an email, separate from the preceding thread, from Mr. Sullivan to Mr. Lammond and an HDI employee (page 17) attaching the September 3 Zelle Opinion (pages 18-37) along with Exhibits A, B, C, D, and E to the September 3 Zelle Opinion (pages 38-65). Those five Exhibits appear to have been created by Plaintiff or previously shared with Plaintiff's employees. Judge Cave concluded that the attorney-client privilege protects the emails between Mr. Lammond and Mr. Sullivan and the September 3 Zelle Opinion and authorized Defendants to redact those materials. *Id.* at 5. Judge Cave ordered the production of the balance of Attachment 2 to Exemplar 5. *Id.*

Judge Cave did not find that the work product privilege shielded any of these documents from production. *Id.* at 2-5.

Defendants objected to the June 10 Order and June 18 Order on June 24, 2025. Dkt. 75. They contend that Judge Cave's decision was "contrary to the law" by not "extend[ing] attorney-client protection to internal communications" regarding legal advice, Objection at 1; *see id.* at 5-7, that Judge Cave applied the attorney-client privilege and work product privilege too narrowly with respect to Exemplars 1 through 5, *id.* at 4, and that the reserve information has limited relevance and should not be discoverable because the "reserve decisions were based on privileged and work product communications," *id.* at 9-10. Plaintiff opposed Defendants' Objection on July 8, 2025. Dkt. 76 ("Opposition"). With the Court's leave, Dkt. 79, Defendants filed a reply on July 21, 2025. Dkt. 80 ("Reply").

## II.  Legal Standard

Under Federal Rule of Civil Procedure 72(a), this Court must "modify or set aside any part" of a magistrate judge's nondispositive order "that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a). "A magistrate[ judge]'s ruling is contrary to law if it fails to apply or misapplies relevant statutes, case law, or rules of procedure, and is clearly erroneous if the district court is left with the definite and firm conviction that a mistake has been committed." *Thai Lao Lignite (Thai.) Co., Ltd. v. Gov't of Lao People's Democratic Republic*, 924 F. Supp. 2d 508, 512 (S.D.N.Y. 2013) (cleaned up).

"In federal actions, discovery should be broad, and all relevant materials which are reasonably calculated to lead to the discovery of admissible evidence should be discoverable." *Nat'l Cong. for Puerto Rican Rts. v. City of New York*, 194 F.R.D. 88, 92 (S.D.N.Y. 2000) (cleaned up); *see* Fed. R. Civ. P. 26(b)(1). Relevance thus is broadly construed. *See Daval Steel Prods. v.*

7

*M/V Fakredine*, 951 F.2d 1357, 1367 (2d Cir. 1991). Once the party seeking discovery demonstrates relevance, the burden shifts to the opposing party "to justify curtailing discovery." *Fireman's Fund Ins. Co. v. Great Am. Ins. Co. of N.Y.*, 284 F.R.D. 132, 135 (S.D.N.Y. 2012) (cleaned up). While "discovery should not be compelled if the [sought] information is privileged," *Collens v. City of New York*, 222 F.R.D. 249, 253 (S.D.N.Y. 2004), "the burden of showing entitlement to a privilege is on the party asserting that privilege," *In re Grand Jury Subpoena Dated July 6, 2005*, 510 F.3d 180, 184 (2d Cir. 2007).

In diversity actions such as this one, state law governs the attorney-client privilege. *See Kleeberg v. Eber*, No. 16 Civ. 9517 (LAK) (KHP), 2019 WL 2085412, at *6 (S.D.N.Y. May 13, 2019). The parties do not dispute that New York provides the applicable law. *See* Objection at 4; Opposition at 8. "'The elements of the attorney-client privilege under New York law are the existence of an attorney-client relationship, a communication made within the context of that relationship for the purpose of obtaining legal advice, and the intended and actual confidentiality of that communication.'" *Kleeberg,* 2019 WL 2085412, at *6 (quoting *Bowne of New York City, Inc. v. AmBase Corp.*, 161 F.R.D. 258, 264 (S.D.N.Y. 1995)). A communication is not necessarily privileged when an attorney transmits or receives it. "If the communication concerns business matters, the privilege does not apply." *Bowne of New York City, Inc. v. AmBase Corp.*, 150 F.R.D. 465, 471 (S.D.N.Y. 1993) (citing *Rossi v. Blue Cross & Blue Shield of Greater N.Y.*, 540 N.E.2d 703, 705 (N.Y. 1989)). Thus, in insurance actions, an insurer's "claims-handling functions and the documents prepared in the ordinary course of an insurer's investigation of whether to pay or deny a claim are not privileged, and do not become so merely because the investigation was conducted by an attorney." *Am. Trucking & Transp. Ins. Co., RRG v. Liberty Mut. Ins. Co.*, No. 14 Civ. 5913 (LDW) (SIL), 2015 WL 13724526, at *2 (E.D.N.Y. Dec. 3, 2015) (cleaned up).

Finally, the privilege must be narrowly construed because, while promoting candor between a client and the client's attorney, the privilege also "constitutes an obstacle to the truth-finding process." *Ambac Assur. Corp. v. Countrywide Home Loans, Inc.*, 57 N.E.3d 30, 34 (N.Y. 2016) (cleaned up).

Federal law governs the work product doctrine. *See Fireman's Fund Ins. Co.*, 284 F.R.D. at 137 n.2. The party asserting the work product protection bears the burden of establishing the privilege. *Egiazaryan v. Zalmayev*, 290 F.R.D. 421, 435 (S.D.N.Y. 2013). Under Federal Rule of Civil Procedure 26(b)(3), "documents . . . prepared by a party or its representative in anticipation of litigation are protected under the work product doctrine." *Brown v. Barnes & Noble, Inc.*, 474 F. Supp. 3d 637, 648 (S.D.N.Y. 2019). A document thus is subject to the doctrine's protection only if it was prepared "*because of*" litigation. *United States v. Adlman*, 134 F.3d 1194, 1202 (2d Cir. 1998) (emphasis in original). This means that the doctrine does not shield "documents that are prepared in the ordinary course of business or that would have been created in essentially similar form irrespective of the litigation." *Id.* The doctrine protects documents created before a lawsuit is filed only if the threat of litigation motivated their creation. *See In re Grand Jury Procs.*, No. 11 Misc. 189 (LAP), 2001 WL 1167497, at *14 (S.D.N.Y. Oct. 3, 2001) (citing *Adlman*, 134 F.3d at 1202). In that case, the proponent of withholding the documents "must demonstrate that a substantial probability of litigation existed at the time the material was created." *Id.* (cleaned up); *see also Fustok v. Conticommodity Servs., Inc.*, 106 F.R.D. 590, 591-92 (S.D.N.Y. 1985) (denying a motion to set aside a magistrate judge's determination where "the prospect of litigation was not identifiable because specific claims had not already arisen" (cleaned up)).

### III.  Discussion

A.  **Application of the Attorney-Client Privilege**

Judge Cave authorized Defendants to redact portions of Exemplars 1 through 5 under the attorney-client privilege.  *See supra* I.  Defendants contend that the authorized "redactions are too narrow to shield the privileged communications as a practical matter."  Reply at 1.  In their view, the privilege allows them to withhold not only the legal advice provided by the insurers' attorneys, but also what they characterize as discussions by the insurers' "internal decision makers" who "disseminat[ed] and implement[ed] . . . that legal advice."  Objection at 7.

Defendants do not argue that Judge Cave ordered the production of any communications "made within the context of" the attorney-client relationship or "for the purpose of obtaining legal advice."  *Kleeberg,* 2019 WL 2085412, at *6.  Instead, they argue that she erred by ordering the production of "internal e-mails discussing legal advice [that] enjoy the same privilege" as communications to or from attorneys that seek or provide legal advice.  Objection at 5.  In support of that argument, Defendants cite *Tower 570 Company LP v. Affiliated FM Insurance Company*, No. 20 Civ. 799 (JMF), 2021 WL 1222438 (S.D.N.Y. Apr. 1, 2021), and *In re Allergan plc Securities Litigation*, No. 18 Civ. 12089 (CM) (GWG), 2021 WL 4121300 (S.D.N.Y. Sept. 9, 2021).  *See* Objection at 5.

In *Tower 570 Company*, the court explained that an attorney's communication of legal advice does not lose its privilege when that advice "is relayed indirectly from counsel through corporate personnel."  2021 WL 1222438, at *3 (cleaned up).  Because a corporate client's decision-making power is "diffused among several employees, the dissemination of confidential communications to such persons does not defeat the privilege."  *Id.* (cleaned up).  *Allergan* applies the same rule.  *See* 2021 WL 4121300, at *3.

10

Those decisions are in line with redactions Judge Cave authorized as protected by the attorney-client privilege. Consistent with *Tower 570 Company* and *Allergan*, Judge Cave authorized redactions of recapitulations of legal advice that the insurer received from counsel and then circulated internally. That is because the privilege was not extinguished when the insurers' employees shared their attorneys' legal advice with colleagues. For example, the September 3 Zelle Opinion and the "Coverage Counsel Conclusion" section maintained their privileged status despite being shared among various employees. *See* June 18 Order at 2 (Exemplar 1, Attachment 1), 5 (Exemplar 5, Attachment 2). But extending the privilege to correspondences where the underlying communications were not privileged finds no support in the law. In other words, for the rule articulated in *Tower 570 Company* and *Allergan* to apply, the internally circulated communications must constitute legal advice in the first instance. Judge Cave concluded that for various parts of the Exemplars, they do not.

After reviewing Judge Cave's June 18 Order, as well as Exemplars 1 through 5 (including their attachments) *in camera*, this Court substantially overrules the Objection as to the application of the attorney-client privilege. Judge Cave articulated the law correctly and applied it properly to conclude that portions of the Exemplars constitute legal advice, such as the section entitled "Coverage Counsel Conclusion" and the September 3 Zelle Opinion. Judge Cave also was correct to decline to extend the privilege further to communications in which Defendants' employees were discussing business strategy, not legal advice, in evaluating Plaintiff's claims; interpreting Plaintiff's insurance policy; weighing whether to negotiate a settlement; and setting reserves. *See Am. Trucking & Transp. Ins. Co.*, 2015 WL 13724526, at *2.

To avoid any ambiguity, the Court notes that the authorized redaction of the "Coverage Counsel Conclusion" section applies throughout the Exemplars. Judge Cave correctly concluded

11

that this section is privileged when it appears in Exemplar 1 and in Attachment 2 to Exemplar 1. June 18 Order at 2-3. But Judge Cave did not specifically state that the "Coverage Counsel Conclusion" section may be redacted in Attachment 1 to Exemplar 1 on pages 3 to 4, Attachment 1 to Exemplar 2 on pages 3 to 4, and Exemplar 3 on page 4. *Id.* at 2-4; *see* Objection at 7 n.6. Nor has Plaintiff argued that the "Coverage Counsel Conclusion" section should be treated differently in different documents. *See generally* Opposition. Thus, the Court notes that, in addition to the redactions specifically authorized in the June 18 Order, Attachment 1 to Exemplar 1 on pages 3 to 4, Attachment 1 to Exemplar 2 on pages 3 to 4, and Exemplar 3 on page 4 may be redacted from "Coverage Counsel Conclusion" through "to the Insurers."

The Court further approves additional redactions consistent with the rule that recapitulations of legal advice among corporate employees are entitled to the attorney-client privilege. In Exemplar 1 (German translation), in the second-to-last paragraph on page 3, Defendants may redact the first sentence and from "According to" through the end of the paragraph, and on page 4, Defendants may redact the first paragraph. Exemplar 5 on page 3 and Attachment 2 to Exemplar 5 on page 1 contain identical emails sent by Mr. Lammond on November 15, 2021, to David Fineberg, also a Generali employee, and copying another Generali employee. In both, Defendants may redact the text from "I refer you" through the word "matter" in the fourth line from the bottom.

**B.    Application of the Work Product Doctrine**

Defendants acknowledge that Judge Cave correctly articulated the proper legal standard for application of the work product privilege. *See* Objection at 8. Yet they make a few arguments for why, in their view, Judge Cave's work product privilege determinations were clearly erroneous and contrary to the law.

First, they argue that Judge Cave erroneously applied the work product privilege standard to the Exemplars "[b]y focusing on when Plaintiff filed suit rather than when Defendants began to anticipate litigation." *Id.*[2] Judge Cave's analysis plainly was not limited to the date of the filing of this action, however. In the June 10 Order, Judge Cave thoroughly analyzed whether the work product protection applies to Exemplars 2 and 5. *Mandarin Oriental*, 2025 WL 1638071, at *7-8, *8 n.3. Judge Cave explained that "New York law requires insurers to set reserves for losses and loss expenses, so Defendants' establishment of reserves based on their investigation of [Plaintiff's] claims occurred in the ordinary course of business irrespective of any prospect of litigation as is required for [work product protection] to apply." *Id.* at *8 (cleaned up). Judge Cave then noted that both Exemplars 2 and 5 are "dated more than a year before this action commenced, reinforcing that these communications were in the ordinary course of Defendants' process of adjusting Mandarin's claims, not in anticipation of litigation." *Id.* (citing *OneBeacon Ins. Co. v. Forman Int'l, Ltd.*, No. 04 Civ. 2271 (RWS), 2006 WL 3771010, at *5 (S.D.N.Y. Dec. 15, 2006) (collecting cases recognizing that documents are not subject to the work product privilege when prepared in the ordinary course of an insurer's process of investigating and adjusting claims)). Judge Cave specifically cited that analysis in her June 18 Order when declining to extend the work product privilege to Exemplar 1 and Attachment 2 to Exemplar 1, noting New York's requirement for insurers to set a reserve and the date of the messages. June 18 Order at 2-3. It is clear that Judge

---

[2] Defendants do not specify which Exemplars they seek to shield behind the work product privilege. While their Objection generally seeks review of Judge Cave's rulings on Exemplars 1 through 5, including their attachments, Objection at 1, Defendants present an argument as to the work product privilege with respect to Exemplar 3 only, *id.* at 8-9. Plaintiff apparently also had trouble deciphering the Objection, noting that "Defendants now object to Judge Cave's work product rulings in Exemplar 1, Exemplar 1 – Attachment 2, Exemplar 2, and Exemplar 5." Opposition at 16. The Court nonetheless reviewed Judge Cave's rulings on Exemplars 1 through 5 and their attachments and concludes that her determination that none of those materials is protected work product accorded with the law.

Cave did not reject application of the work product privilege solely because the documents pre-dated the commencement of this litigation.

Defendants also argue that Judge Cave failed to consider that the Exemplars discuss "litigation risk," settlement negotiations, and how "certain jurisdiction[s]" may interpret provisions in their insurance policy. Objection at 8-9. Not so. In the June 10 Order, Judge Cave acknowledged that Defendants asserted "that 'the reserves methodology incorporated legal advice, potential litigation risk, and information gained during protected settlement negotiations.'" *Mandarin Oriental*, 2025 WL 1638071, at *7 (quoting Dkt. 62 at 5). She also considered whether Defendants had prepared the documents in the Exemplars "in anticipation of litigation" or in the ordinary course of business. *Id.* at *8.

In the end, Judge Cave correctly concluded that Defendants' efforts to invoke the work product privilege fall short because they fail to show that any of the subject documents were prepared "because of" litigation and not merely out of a "generalized desire to avoid litigation." *In re Grand Jury Procs.*, 2001 WL 1167497, at *15 (noting that "a generalized desire to avoid litigation is insufficient to meet the 'in anticipation of litigation' requirement"). The documents were made mostly in late 2021, with some spilling into 2022. Yet Defendants did not communicate a denial of coverage to Plaintiff until February 2023. Opposition at 16. Though no bright line rule exists for when an insurer's documents produced in the ordinary course of business become work product, *see AIU Ins. Co. v. TIG Ins. Co.*, No. 07 Civ. 7052 (SHS) (HBP), 2008 WL 4067437, at *14 (S.D.N.Y. Aug. 28, 2008), courts in this District have held that, "in the context of insurance companies' work product assertions, 'if the claim has not yet been rejected the documents are part of the claim investigation process and are not work product.'" *Great Am. Ins. Co. of N.Y. v. Castleton Commodities Int'l LLC*, No. 15 Civ. 3976 (JSR), 2015 WL 6437397, at *2 (S.D.N.Y.

Oct. 15, 2015) (quoting *Amoco Oil Co. v. Hartford Accident & Indem. Co.*, No. 93 Civ. 7295 (SS), 1995 WL 555696, at *1 (S.D.N.Y. Sept. 18, 1995)).  Faced with this general standard, Defendants have not come forward with "specific and competent evidence that the documents were created in anticipation of litigation."  *Weber v. Paduano*, No. 02 Civ. 3392 (GEL), 2003 WL 161340, at *4 (S.D.N.Y. Jan. 22, 2003).  Judge Cave's conclusion that Defendants failed to meet their burden to assert the protection of the work product doctrine therefore was not contrary to law or clearly erroneous.

### C. Relevance of Reserve Information

Defendants' challenge to Judge Cave's ruling requiring the production of reserve information also fails.  *See* Objection at 9-10; *Mandarin Oriental*, 2025 WL 1638071, at *7-8. The Objection provides no support for Defendants' contention that the reserve information is irrelevant, nor does it present any persuasive argument that Judge Cave ordered the production of privileged reserve information.  *See* Objection at 9-10.  Having reviewed Judge's Cave analysis of the reserve information's relevance and whether the attorney-client privilege or the work product doctrine justify withholding that information, the Court concludes that Judge Cave's ruling was not contrary to the law or clearly erroneous.

### IV.  Conclusion

The Court substantially overrules Defendants' Objection.  The Court clarifies that Defendants may redact Attachment 1 to Exemplar 1 on pages 3 to 4, Attachment 1 to Exemplar 2 on pages 3 to 4, and Exemplar 3 on page 4 from the line beginning "Coverage Counsel Conclusion" until "to the Insurers."  The Court further authorizes the following additional redactions:  Exemplar 1 (German translation) in the second-to-last paragraph on page 3, the first sentence and from "According to" through the end of the paragraph; Exemplar 1 (German translation) on page 4, the

first paragraph; and Exemplar 5 on page 3 and Attachment 2 to Exemplar 5 on page 1, from "I refer you" through the word "matter" in the fourth line from the bottom.

    SO ORDERED.

Dated: November 6, 2025
       New York, New York

                                       JOHN P. CRONAN
                                 United States District Judge